## SAKS v. EICHEL.

### No. 5383.

Court of Appeal of Louisiana. Second Circuit.

April 2, 1937.

Brunswig Sholars, of Monroe, and John M. Madison, of Bastrop, for appellant.

Shotwell & Brown, of Monroe, for appellee.

HAMITER, Judge.

An automobile owned and driven by defendant, Charles N. Eichel, collided with one operated by the chief of the Monroe fire department. In the collision, which occurred at the intersection of Wood and Catalpa streets in the city of Monroe, plaintiff, a guest passenger in defendant's machine, was injured.

In this suit to recover damages, plaintiff charges that defendant was negligent in that he failed (1) to heed the warning signal of the fire chief's machine; (2) to keep a proper lookout for vehicles crossing Catalpa street; and (3) to attempt to avoid the accident after he saw the approaching car.

Defendant answered, denying all negligence, and, alternatively, averring that plaintiff was contributorily negligent.

Thereafter, he filed an exception of no cause or right of action. This was sustained by the trial court and plaintiff prosecuted an appeal. This court reversed the judgment and remanded the case for a trial on its merits. 167 So. 464.

Subsequently, the case was tried, and there was judgment rejecting plaintiff's demands. This appeal was then perfected.

Wood street runs in an east and west direction. Intersecting and crossing it at right angles and running north and south are St. John, Jackson, and Catalpa streets. The last-mentioned three streets are a block apart. Jackson street is in the center, Catalpa is east thereof, and St. John is on the west.

About noon on the fourteenth day of November, 1935, plaintiff Saks, one Louis Kraus and defendant Eichel entered the latter's automobile, which was parked at

the rear of the Kraus & Kahn Store located on Desiard street. The car was driven east onto Fourth street and along that street to and across Desiard street. It then entered Catalpa street and traveled south thereon at a rate of speed of from 15 to 20 miles per hour. Defendant occupied the driver's position, Kraus sat beside him, and plaintiff was on the rear seat. The back windows of the car were open.

While that journey was in progress, the fire alarm announced a conflagration at 314 North Ninth street. In answer to the alarm, Fire Chief Frank Roddy departed from the fire department station, which is located on St. John street between Grammont and Wood streets, in his Buick coupé. His machine was driven south to and turned left on Wood street. While proceeding east on this street, Chief Roddy slowed considerably at the intersection of Jackson street to avoid striking a bicyclist, then accelerated his machine. When about midway between Jackson and Catalpa streets, he was compelled to again reduce his speed and drive around another vehicle. After completing this maneuver, he continued his journey and coursed rapidly into the intersection of Wood and Catalpa, where he collided with the car driven by defendant Eichel. The siren on the fire chief's coupé sounded continuously, but with certain variations, from the time the car left the station until the moment of impact.

Defendant's car was struck on its right side, while the front end thereof was south of the center of the intersection, and was knocked into the air. It landed on its top and came to rest on the sidewalk in front of a grocery store located on the southeast corner of the intersecting streets.

Catalpa street, on which defendant's car was proceeding, is a limited right of way thoroughfare by virtue of the provisions of Ordinance No. 2550 of the city of Monroe. Vehicles traveling north and south thereon have the right of way over those crossing or turning into it; the latter, however, are not compelled to stop before making such crossings or turnings.

On the northwest corner of Catalpa and Wood streets stands a one-story frame building which is used by one Dr. McKoin as an office. It is located near the sidewalks on that corner. There are many other buildings on Catalpa street in the block immediately north of Wood street.

Defendant Eichel testified that before entering the intersection in question he looked to the right or west and saw no vehicles approaching. The sounding of a siren of any nature or kind had not been previously detected by him, and there existed no impairment of his hearing. When about the center of Wood street he observed the chief's car in close proximity and heard its siren. This was the first knowledge that he had of the approaching machine, and the collision occurred almost simultaneously with the acquiring of it. No opportunity was afforded him to either stop or turn when the accident appeared imminent. He continued on a straight course. Plaintiff Saks made no statements or remarks to him of any nature from the time the car was entered until the happening of the accident.

The testimony of plaintiff is to the effect that he was knocked unconscious by the collision, and did not remember anything that occurred just prior to or at the time of the accident.

In an open roadster which was traveling a few feet behind defendant's car and in the same direction, were two ladies, teachers in the Ouachita Parish Grammar School, who witnessed the accident. According to their testimony, neither of them heard nor saw the fire chief's car until it entered the intersection in question. They further testified that defendant did not slow or turn his vehicle just before the occurrence of the collision, but continued to drive south.

Numerous other witnesses, who were near the intersection at the time, gave testimony regarding the approach of Chief Roddy's car. Some of them heard the sounding of the siren as the machine proceeded along Wood street, and while it was a considerable distance west of Catalpa street, but most of these were not seated in a motor vehicle whose engine was running and were not at defendant's identical location. There were others in that vicinity who did not hear the siren until a moment or so before the cars collided.

Viewing the evidence as a whole, we are convinced that defendant did not hear the siren until too late to avoid the accident. The operation of the engine of his car and the surrounding buildings no doubt prevented his reception of the given warning signal. The fact that the school teachers, who occupied an open vehicle traveling immediately behind him, were not aware of the car's approach, and the further fact that defendant made no effort to change

the course or speed of his car just before and on entering the intersection, weighs strongly in favor of our conviction on this point. It is reasonable to assume that if defendant had possessed previous and sufficient knowledge of the on-coming and speeding machine, he would not have steered his vehicle directly into its path.

Also, we think that defendant exercised the required care and kept a proper lookout in and during his driving. He was traveling at a moderate rate of speed on a right of way street, and his view west on Wood street was considerably obstructed by the office building of Dr. McKoin. When beginning his crossing of Wood street there was no one within the range of his vision, and he was entitled to the assumption that vehicles approaching the intersection would respect his right of way privilege and would not employ an excessive rate of speed. There was no reason for him to anticipate the approach of the fast-moving chief's car, and he was not delinquent in failing to see and hear that which he was not legally required to anticipate. Roll Osborn & Sons v. Howatt (La. App.) 167 So. 466, 469.

Accordingly, we conclude that defendant was not negligent, and was in no manner responsible for the collision. Because of this conclusion, it is unnecessary to give consideration to defendant's alternative defense of contributory negligence.

The judgment of the trial court is correct, and it is affirmed.